UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
CHINELO UGBOAJA,

                              Plaintiff,

                -v-

PERRY AVENUE FAMILY MEDICAL, INC.,
CHRISTIAN RAJIV, GITEL STIEL a/k/a LIBBY STIEL,
and MOSHIE STIEL,

                              Defendants.
```

25 Civ. 78 (PAE) (OTW)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

Plaintiff Chinelo Ugboaja brings this action, alleging violations of minimum-wage, overtime, spread-of-hours, notice, and wage-statement provisions of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and New York City Human Rights Law ("NYCHRL"). Dkt. 32 ("FAC"). She sues defendants Perry Avenue Family Medical ("Perry Medical"), a Bronx-based medical facility, and three of its employees—Christian Rajiv, Gitel Stiel, and Moshie Stiel. *Id.*

On January 6 and March 12, 2025, the Court referred this action to the Honorable Ona T. Wang, United States Magistrate Judge, for general pretrial management and the resolution of any dispositive motions, respectively. Dkts. 10, 23. On June 6, 2025, Ugboaja amended her complaint. FAC at 1. On July 10, 2025, defendants moved to compel arbitration and to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6) and 12(b)(5). Dkt. 35. On January 30, 2026, Judge Wang issued a Report and Recommendation (the "Report"). Dkt. 43. The Report recommended denying the motion to compel arbitration, finding unenforceable the mandatory arbitration clause in Ugboaja's unsigned employment agreement.

*Id.* at 17–20. It also recommended denying the motion to dismiss, finding service of the FAC adequate and that the FAC stated a claim under the FLSA and NYLL. *Id.* at 5–17. On February 13, 2026, defendants objected to the Report. Dkt. 44. On February 26, 2026, Ugboaja opposed. Dkt. 45.

For the following reasons, the Court declines to adopt the Report. The Court grants defendants' motion to compel arbitration and, accordingly, dismisses as moot their motion to dismiss, without prejudice to defendants' right to seek similar relief in arbitration.

## I.      Background

### A.      Parties

Ugboaja is a nurse practitioner and citizen of New York. FAC ¶¶ 8, 27.

Perry Medical is a domestic limited liability company. *Id.* ¶ 9. Gitel Stiel[1] is Perry Medical's chief executive officer ("CEO"). *Id.* ¶ 11; Dkt. 35-2 ("L. Stiel Decl.") ¶ 2. Moshie Stiel is a site manager at Perry Medical. *Id.* His responsibilities include paying Perry Medical employees. FAC ¶ 17. Rajiv is a general administrator at Perry Medical. *Id.* ¶ 16.

### B.      Factual Background[2]

On March 14, 2024, Perry Medical advertised a job for a pediatric nurse practitioner. *Id.* ¶ 31. The pediatric nurse practitioner was to earn $80 per hour, work no more than 27 hours a

---

[1] Because two defendants have the same last name, Stiel, the Court refers to each by first name for ease of reference.

[2] The Court's account of the underlying facts is drawn from the FAC (Dkt. 32), defendants' motion to compel arbitration (Dkt. 35) and the declarations and exhibits attached thereto (*id.*), Ugboaja's opposition to defendants' motion (Dkt. 37) and associated declaration (Dkt. 36), and Ugboaja's reply (Dkt. 38). In deciding a motion to compel arbitration, the Court is required to "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). The Court draws all reasonable inferences in favor of the non-moving party, here, Ugboaja. *Id.*

week, and perform services subject to supervision by a pediatric physician. *Id.* ¶¶ 28, 31. On March 15, 2024, Ugboaja interviewed with CEO Gitel for the position at Perry Medical. L. Stiel Decl. ¶ 3. On March 17, 2024, Gitel emailed Ugboaja a document titled "Chinelo Ugboaja PNP Employment Agreement." Dkt. 35-5 ("Employment Agreement" or "Agreement"). In the email's body, Gitel stated:

> As discussed on Friday, please see attached contract. Please review the contract and let me know if there are any changes you need me to do.
>
> Thank you and I look forward to working with you!

Employment Agreement at 1.

The Agreement that Gitel sent Ugboaja was between Perry Medical and Ugboaja. It provided that Ugboaja would be hired "effective March 19, 2024." *Id.* at 2. It stated that Ugboaja's duties would include providing pediatric services, participating in continuing education programs, preparing and maintaining clinical records, working collaboratively with Perry Medical physicians and staff, and performing other duties as reasonably required to satisfy the facility's operational needs. *Id.* at 12. The Agreement stated that her salary was $80 per hour. *Id.* at 2. It defined the position as part-time, not exceeding 27 hours per week. *Id.* It stated that the work was subject to direction from the facility's staff. *Id.* at 3. And it included a merger clause stating that it reflected the "entire agreement among the parties concerning" Ugboaja's employment at Perry Medical. *Id.* at 9.

Salient here, the Agreement stated that any disputes between the parties, arising from the Agreement or otherwise, would be subject to arbitration. It stated:

> If any disagreement shall arise between or among the parties, with respect to this Agreement or with respect of any other matter, cause or thing not otherwise provided for, same shall be decided and determined by binding arbitration. The arbitration shall be conducted in Nassau County, New York according to the rules of an arbitration association as determined by [Perry Medical]. The arbitrator's

3

award may be confirmed and entered as a final judgment in any court of competent jurisdiction and enforced accordingly and the award of the arbitrator shall be binding and conclusive upon the parties.

*Id.* at 10.

On March 19, 2024, Ugboaja began working at Perry Medical. FAC ¶ 27. She alleges that she was "hired" on March 19, 2024; her position was "pediatric nurse practitioner"; this position entailed delivering health care to patients younger than 21; her work was subject to the supervision of a pediatric physician; she worked two days per week from 9 a.m. to 6 p.m. and no fewer than 18 hours per week; her rate of pay was $80 per hour; she was to be paid biweekly; and "Perry employed [her] from March 19, 2024 through April 17, 2024." *Id.* ¶¶ 23, 27–29, 30–31, 34.[3]

On or about April 2, 2024, Ugboaja alleges, she notified Gitel that she had not yet received a paycheck. *Id.* ¶ 36. Gitel stated that "they would pay her" and told Ugboaja to speak with Moshie, who was in payroll. *Id.* ¶ 37. Moshie then told Ugboaja to speak with Gitel. *Id.* ¶ 38. Ugboaja states that "[Gitel] Stiel and [d]efendant Moshie had [her] go back and forth between them asking for her paycheck." *Id.*

On April 17, 2024, Rajiv called Ugboaja and told her that her employment at Perry Medical was terminated. *Id.* ¶ 39. On April 29, 2024, Ugboaja contacted Rajiv and told him she had not received paychecks for her work at Perry Medical. *Id.* ¶ 40. Between April and May 11, 2024, Ugboaja continued to contact Rajiv and Gitel about her missing pay. *Id.* ¶¶ 41–44.

---

[3] Defendants do not dispute that Ugboaja worked at Perry Medical on March 19, 21, 28, and 29, 2024; and on April 3, 5, 15, 16, 2024. L. Stiel Decl. ¶ 6. They represent that on six of these days, she worked between 9 a.m. and 6 p.m. and that, on the other two, she worked between 9 a.m. and 5 p.m. *Id.*

4

On May 15, 2024, Rajiv and Moshie met with Ugboaja and offered her $4,000 as a "total payment of her salary." *Id.* ¶ 45. Ugboaja alleges she accepted the offer but "a few minutes later," Moshie called and withdrew the offer, instead offering $2,000. *Id.* ¶¶ 45–46. Ugboaja rejected that offer. *Id.* ¶ 47. That day, by email and text message, Ugboaja again contacted Gitel about not having been paid. *Id.* ¶ 48. On May 16, 2024, Gitel emailed Ugboaja stating, "in sum and substance," that Perry Medical was not obliged to pay her for days she spent in "training" there. *Id.* ¶ 49.

### C.    Procedural History

On January 3, 2025, Ugboaja filed a complaint against Perry Medical, Rajiv, Gitel, and "Libby Stiel"[4] for failure to pay "her wages during her employment." Dkt. 1. On January 6, 2025, the Court referred the case to Judge Wang for general pretrial supervision. Dkt. 10. On March 10, 2025, defendants moved to compel arbitration and to dismiss Ugboaja's complaint, and, two days later, the Court amended its referral to Judge Wang to encompass these motions. Dkts. 21, 23. On June 6, 2025, Ugboaja filed the FAC, the operative complaint today. Dkt. 32. On July 10, 2025, defendants moved to compel arbitration and to dismiss the FAC. Dkt. 35. On July 24, 2025, Ugboaja opposed those motions. Dkts. 36–37. On July 31, 2025, defendants replied. Dkt. 38. On January 30, 2026, Judge Wang issued the Report, which recommended denial of the defense's motions. Dkt. 43.

On February 13, 2026, defendants filed objections to the Report. Dkt. 44. As to the motion to compel arbitration, defendants argued that the Report erred in finding that, because the Agreement was not signed by Ugboaja, its arbitration clause is not binding; the key inquiry, they

---

[4] The initial complaint named Gitel and Libby Stiel separately. Dkt. 1. Gitel is known by both names, and the FAC identifies her as "Gitel Stiel a/k/a Libby Stiel." Dkt. 21-2 ¶ 1; Dkt. 32.

argued, was whether Ugboaja manifested her assent to it and availed herself of its benefits, which they contended she had by continuing to work at Perry Medical and claiming pay under the Agreement's terms. *Id.* at 23–26. As to the motion to dismiss, they argued principally that the Report misapplied *res judicata*, and should have treated Ugboaja's two prior unsuccessful state-court actions—against Gitel "c/o Perry Avenue Family Medical," and against "Perry Avenue Family Medical Center," both of which had been dismissed with prejudice, the first after a trial—as preclusive. They also argued that the Report erred in its analysis of the sufficiency of Ugboaja's service under Rule 12(b)(5), and improperly relied on a Department of Labor factsheet in concluding that Ugboaja was an employee. Dkt. 44 at 7–27.

On February 26, 2026, Ugboaja responded. Dkt. 45. As to arbitration, she argued that she and Perry Medical had not objectively manifested their mutual assent to the agreement and that the doctrine of estoppel urged by defendants was germane to contract breach, not claims under the FLSA and NYLL. *Id.* at 6–7. As such, she argued, the Agreement's arbitration clause was unenforceable. *Id.* As to dismissal, she argued that the Report correctly declined to find *res judicata*, found service adequate, and found the FAC plausibly to allege her employee status under the FLSA and NYLL. *Id.* at 4–6.

## II.    Applicable Legal Standard

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950, 2014 WL 4635575, at *2 (S.D.N.Y. Aug.

6

19, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810, 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)); *see also Wilds v. United Parcel Serv.*, 262 F. Supp. 2d 163, 169–70 (S.D.N.Y. 2003).

"Within 10 days after being served with a copy of [a magistrate's] recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b). The Court shall make a *de novo* determination of those portions of the report to which a party objects. 28 U.S.C. § 636(b)(1). Where a litigant's objections take "issue with a specific legal conclusion in the report and recommendation," they should be considered *de novo*, even if they repeat an argument raised before the magistrate judge. *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 361 (2d Cir. 2025).

## III.    Discussion

The Court's analysis begins with defendants' motion to compel arbitration. The Court does so because, where a dispute is arbitrable, it is ordinarily for the arbitrator, not the Court, to resolve a motion to dismiss. *Jones v. Landry's, Inc.*, No. 23 Civ. 9920, 2025 WL 1527307, at *5 (S.D.N.Y. May 29, 2025) ("[s]ince jurisdiction generally must precede merits in dispositional order, a district court should generally rule on a motion to compel arbitration before proceeding to a merits-based motion to dismiss"); *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 181 (S.D.N.Y. 2018) (same; where claims are subject to mandatory arbitration provisions, plaintiff cannot proceed on these in district court), *aff'd*, 837 F. App'x 841 (2d Cir. 2021) (summary order); *Morgikian v. Fidelity Invs.*, No. 20 Civ. 5724, 2022 WL 836950, at *1 n.1 (E.D.N.Y. Mar. 21, 2022) (same).

### A.    Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of [the] contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. This liberal policy "favor[s]" arbitration

agreements and places them on the "same footing" as other contracts. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) and *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)) (cleaned up). The threshold question a court must consider is whether an agreement to arbitrate exists between the parties. *Id.* at 73–74. That question is governed by state contract-law principles. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 27 (2d Cir. 2002).

It is undisputed that New York law governs this dispute. Under that law, an employment agreement need not be in writing to be enforceable. *Kroshnyi v. U.S. Pack Courier Serv., Inc.*, 771 F.3d 93, 111 (2d Cir. 2014); *Chung v. J.H. Whitney Cap. Partners*, No. 24 Civ. 5864 (PAE), 2025 WL 1184722, at *4 (S.D.N.Y. Apr. 23, 2025). And a written employment agreement need not be signed to be enforceable. *See Kimm v. Kyu Sung Cho*, 706 F. App'x 1, 3 (2d Cir. 2017) (summary order); *Asesores y Consejeros Aconsec CIA, S.A. v. Glob. Emerging Mkts. N. Am., Inc.*, 841 F. Supp. 2d 762, 766 (S.D.N.Y. 2012) ("[u]nder New York law, a contract need not be signed by either or both parties in order to be enforceable" (cleaned up)); *Paxi, LLC v. Shiseido Americas Corp.*, 636 F. Supp. 2d 275, 282 (S.D.N.Y. 2009) (an "unsigned contract may be enforceable, provided there is objective evidence establishing that the parties intended to be bound" (cleaned up)).

The inquiry instead is whether the parties intended to be bound by the agreement. *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573–74 (2d Cir. 1993). To determine that, a court looks to the "objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Stonehill Cap. Mgmt., LLC v. Bank of the West*, 28 N.Y.3d 439, 448–49 (2016). Such objective manifestations may be found if the "contract provides some degree of certainty as to price," if the parties communicate certain expectations

8

regarding the performance of the contract, and if a party begins to perform the bargained-for activities under the contract. *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 125 (2d Cir. 2006); *Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 547 (2d Cir. 1989); *Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009) (summary order).

Heeding this principle, New York courts have commonly enforced the terms of unsigned employment contracts where the parties' words and deeds made clear their intent to be bound. *See, e.g., R. G. Grp. Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75–76 (2d Cir. 1984) ("[P]artial performance is an unmistakable signal that one party believes there is a contract; and the party who accepts performance signals, by that act, that it also understands a contract to be in effect."); *Schatzmann v. Harris Partners*, No. 21 Civ. 7301, 2024 WL 1255296, at *6 (S.D.N.Y. Mar. 22, 2024) (finding plaintiffs' claims for unpaid wages, which were based on an unsigned employment agreement, reflected intent to be bound); *Kolchins v. Evolution Mkts., Inc.*, 8 N.Y.S.3d 1, 10 (1st Dep't 2015), *aff'd*, 31 N.Y.3d 100 (2018) (finding that email sent with draft employment agreement conveyed mutual intent to be bound sufficient to form enforceable contract); *Davis v. Crothall Healthcare, Inc.*, No. 22 Civ. 7196, 2023 WL 6519603, at *5 (S.D.N.Y. July 7, 2023) (finding unsigned agreement enforceable against employee), *report and recommendation adopted*, 2023 WL 6237845 (S.D.N.Y. Sept. 26, 2023); *Akhter v. Compass Grp. USA, Inc.*, No. 22 Civ. 2194, 2022 WL 4638635, at *2 (S.D.N.Y. Sept. 30, 2022) (same).

The parties' acts and deeds here—by Ugboaja's own account—during her time at Perry Medical clearly manifested an objective intent to be bound by the written Agreement.[5]

---

[5] Ugboaja's initial complaint, Dkt. 1, stated that her employment was consistent with "the employment contract." *Id.* ¶ 30. The FAC, which Ugboaja filed after defendants moved to compel arbitration based on the Agreement's arbitration provision, recasts the employment contract as "proposed." FAC ¶ 31.

Ugboaja's Complaint pleads that she began her "employment" at Perry Medical on March 19, 2024, the date the Agreement specified as her start date. FAC ¶ 27; Agreement at 2. She pleads that her work there was as a pediatric nurse practitioner, the position identified in the Agreement. FAC ¶ 27; Agreement at 2. She pleads that she provided on-site "services" delivering health care to individuals younger than 21, consistent with the responsibilities of a pediatric nurse practitioner as set out in the Agreement. FAC ¶¶ 27–28; Agreement at 12. She pleads that she worked nine-hour shifts twice a week, within the weekly maximum hours (27) the Agreement set. FAC ¶¶ 30–31; Agreement at 2. And one of wage claims is that the defendants "failed to pay [her] all of her wages during her employment"—specifically, $80 per hour, precisely the wage rate specified in the Agreement. FAC ¶¶ 1, 31; Agreement at 2. Other than defendants' failure to pay her for her work, she does not identify any aspect of her work at Perry Medical that departs from that provided in the Agreement. And she does not, and could not credibly, argue that the Agreement was too vague or open-ended to bar a valid contract from being formed. *See Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 808 (S.D.N.Y. 2012). On the contrary, the 13-page Agreement appears comprehensive, detailed, and complete.

Defendants do not challenge the validity of the Agreement either. Their frontline position—that Ugboaja's claim for unpaid wages is subject to arbitration—presupposes the enforceability of the Agreement, insofar as it contains the arbitration clause. *See, e.g.*, Dkt. 35 at 10 ("[Ugboaja's] claim is subject to the contract's mandatory arbitration clause"); *id.* at 11 (arguing that Ugboaja's claim is "premised on . . . [the] contract here from which she was supposed to receive a financial benefit in the form of wages"); *id.* at 13 ("The contract specifically contemplated paying [Ugboaja] a tangible financial benefit for her services . . . . As such, [Ugboaja] would be estopped to now deny the mandatory arbitration clause in the

employment agreement that was sent to her."). Because defendants acknowledge that Ugboaja was scheduled to and did work on shifts consistent with the shift and hours parameters specified in the Agreement, they too describe a work arrangement "operat[ing] under [the] terms" of the Agreement. *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 812 N.Y.S.2d 435, 437 (2006).[6]

The Court accordingly finds that Ugboaja and Perry Medical were parties to a binding employment agreement. The issue then is the enforceability of the Agreement's arbitration provision. Agreement at 9 (stating arbitration clause). Under New York law, arbitration agreements are governed by New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") § 7501, which states:

> [a] written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award.

Once the party moving to compel arbitration makes a *prima facie* initial showing that an agreement to arbitrate existed, as Perry Medical has here, the burden shifts to the party opposing arbitration to put the making of that agreement "in issue." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order). The party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (cleaned up). The court must determine whether "there is a valid contract to arbitrate between the [parties]," and whether the parties' dispute "is covered by the contract." *Unique Woodworking, Inc. v. N.Y.C. Dist. Council of*

---

[6] To the extent that defendants claim that Ugboaja—despite being subject to the Agreement—was in some respect not an "employee" within the meaning of the FLSA or NYLL, that argument is for the arbitrator to resolve.

11

*Carpenters' Pension Fund*, No. 7 Civ. 1951, 2007 WL 4267632, at \*4 (S.D.N.Y. Nov. 30, 2007). Finding such, "the role of the court ends and the matter is one for arbitration." *Regal Games, LLC v. SellerX Eight GMBH*, 714 F. Supp. 3d 251, 263 (S.D.N.Y. 2024) (quoting *Unique Woodworking, Inc.*, 2007 WL 4267632, at \*4).

The Court so finds here. Ugboaja argues that the unsigned nature of the Employment Agreement prevents enforcement of its arbitration provision. That is wrong. Courts applying New York law have consistently "require[d] that an agreement to arbitrate be in writing but not necessarily be signed by the party to be bound." *Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co.*, 641 F. Supp. 2d 196, 203 (S.D.N.Y. 2009). "[I]t is well-established that a party may be bound by an agreement to arbitrate even absent a signature." *Id.* (cleaned up); *see also Crawford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 361 N.Y.S.2d 140, 143–44 (1974) (written agreement to arbitrate need not be signed to be enforceable if there is other proof that parties actually agreed to arbitrate); *God's Battalion of Prayer Pentecostal Church, Inc.*, 812 N.Y.S.2d at 436–37 (where parties operated under terms of unsigned contract and one relied on contract, arbitration clause could be enforced); *Liberty Mgmt. & Const. Ltd. v. Fifth Ave. & Sixty–Sixth St. Corp.*, 620 N.Y.S.2d 827, 830 (1st Dep't. 1995) (arbitration clause in contract unsigned by contractor was enforceable, because contractor indicated acceptance by complying with contract's general conditions). An arbitration agreement can be enforced against an employee without her signature, including where the employee "received the mailing that contained [the agreement], continued with her employment, and did not opt out of arbitration." *Manigault*, 318 F. App'x at 8.

Such is the case here. Defendants have publicly filed a copy of the email Gitel sent Ugboaja on March 17, 2024, which attached the Employment Agreement. *See* Agreement at 1.

The email instructed Ugboaja to "review" the Agreement and notify Gitel of "any changes" she believed were needed. *Id.* Ugboaja does not dispute receiving the Agreement. She does not claim to have repudiated it or requested any change to it. FAC ¶ 31. On the contrary, by her account, she commenced work at Perry Medical two days after receiving the Agreement, and, as noted, her account of her work there, and the nature of her pay claim, align with the terms of employment set out in the Agreement. As to the mandatory arbitration provision, Ugboaja does not claim to have objected to, or raised any issue concerning, it. Having pursued recovery under the Agreement, Ugboaja cannot selectively repudiate its arbitration clause. An employee cannot "pick and choose which provisions [of the Agreement] suits [her] purposes, disclaiming part of a contract while alleging breach of the rest." *God's Battalion of Prayer Pentecostal Church, Inc.*, 812 N.Y.S.2d at 437; *see also Am. Bureau of Shipping v. Tencara Shipyard S.P.A.,* 170 F.3d 349, 353 (2d Cir. 1999); *Thomson–CSF, S.A. v. Am. Arb. Ass'n,* 64 F.3d 773, 778–79 (2d Cir. 1995).

Ugboaja faults defendants for not coming forward with "an executed employment agreement," which she contends is required to mandate arbitration. *See* Dkt. 37 at 17–18. She misreads the law. There is, again, no requirement that a written agreement be executed for its terms to be binding. *See Valdes v. Swift Transp. Co.*, 292 F. Supp. 2d 524, 531 (S.D.N.Y. 2003) ("defendant had no obligation to sign the employment application to make the arbitration provision enforceable"); *Mahant v. Lehman Bros.,* No. 99 Civ. 4421, 2000 WL 1738399, at *2–3 (S.D.N.Y. Nov. 22, 2000) (same). And *Katz v. Cellco Partnership*—which does not exist at the citation Ugboaja supplies—does not support her position.[7] On the contrary, the Second Circuit

---

[7] Ugboaja cites "*Katz v. Cellco P'ship*, 14 F. Supp. 3d 130 (S.D.N.Y. 2014)." Dkt. 37 at 17. No case bearing this name appears at that citation.

in that case affirmed the district court's decision to compel arbitration. *See Katz v. Cellco P'ship*, 794 F.3d 341, 344–45 (2d Cir. 2015).

Ugboaja's claims in this lawsuit are also squarely within the arbitration provision's scope. *See, e.g., Rochdale Vill., Inc. v. Pub. Serv. Emp. Union, Loc. No. 80, Int'l Bhd. of Teamsters of Am.*, 605 F.2d 1290, 1295 (2d Cir. 1979) (arbitration should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the dispute"). The provision broadly covers "any disagreement . . . between or among the parties, with respect to this Agreement or with respect of any other matter, cause or thing." Agreement at 10. Ugboaja's claim here, that she was not paid the wages at the rates provided in the Agreement, is such a "disagreement."

It is no answer that Ugboaja does not bring contract-breach claims, but instead claims violations of the FLSA, NYLL, and NYCHRL. Dkt. 45 at 7. Such statutory claims are arbitrable where they fall within the scope of an arbitration clause, as Ugboaja's do here, and the arbitration provision need not specifically refer to a statute to cover claims under it. *See, e.g., Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122, 123 (2d Cir. 2017) (holding FLSA claims subject to arbitration); *Reynolds v. de Silva*, No. 9 Civ. 9218, 2010 WL 743510, at *4 (S.D.N.Y. Feb. 24, 2010) (same). And it is well settled that parties may agree to arbitrate claims under these three statutes. *See, e.g., Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 292 n.1 (2d Cir. 2013) (holding FLSA and NYLL claims shall proceed to arbitration); *Alvarez v. Nat'l Debt Relief, LLC*, No. 16 Civ. 4156, 2017 WL 2876478, at *3 (S.D.N.Y. June 23, 2017) ("Courts in this District have repeatedly found both FLSA and NYLL claims to be arbitrable."); *Martin v. SCI Mgmt. L.P.*, 296 F.Supp.2d 462, 467 (S.D.N.Y. 2003) (finding "no indication" that Congress intended plaintiff's FLSA claim to be nonarbitrable); *Ciago v. Ameriquest Mortgage Co.*, 295

14

F. Supp. 2d 324, 332 (S.D.N.Y. 2003) ("Congress has not evinced an intention to preclude arbitration of FLSA claims."); *Edwards v. CVS Health Corp.*, 714 F. Supp. 3d 239, 247 (S.D.N.Y. 2024) (finding NYCHRL claims subject to arbitration).

Ugboaja's two remaining arguments opposing compulsory arbitration are unavailing.

First, Ugboaja argues that defendants "waived" the right to demand arbitration by "engaging in [this] litigation." Dkt. 37 at 18. That argument is unsustainable. It is common for a defendant to respond to a federal-court lawsuit by moving there to compel arbitration, as the defendants have done here. Submitting to the jurisdiction of the Court for the purpose of making such a motion does not waive the right to pursue arbitration. *See, e.g.*, *Tech. in P'ship, Inc. v. Rudin*, 538 F. App'x. 38, 39 (2d Cir. 2013) (summary order) (waiver of right to move to compel arbitration is not "lightly inferred"; it arises when a party engages in "protracted litigation that prejudices the opposing party"); *Moody v. Starbucks Corp.*, No. 25 Civ. 8739, 2026 WL 146404, at *8 (S.D.N.Y. Jan. 20, 2026). A party may pursue a motion to compel arbitration while also moving to dismiss under Rule 12(b)(6), whether contemporaneously with the motion to compel (as here) or in advance of it. *See, e.g.*, *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 463 (2d Cir. 1985) (defendant did not waive right to arbitration when it moved to compel arbitration only after obtaining ruling on Rule 12(b)(6) motion); *Poletti v. Pepsi-Cola Bottling Co.*, 2023 WL 5769498, at *4 (S.D.N.Y. Sept. 6, 2023); *Murray v. UBS Sec.*, 2014 WL 285093, at *6 (S.D.N.Y. Jan. 27, 2014); *Mahmoud Shaban & Sons Co. v. Mediterranean Shipping Co.*, 2013 WL 5303761, at *2 (S.D.N.Y. Sept. 20, 2013) ("[I]t is well established that [defendant's] choice to file a motion to dismiss before moving to compel arbitration does not in

15

itself waive [defendant's] right to enforce the arbitration clause after the motion to dismiss is resolved.").[8]

Second, Ugboaja argues that the arbitration agreement is unenforceable because defendants did not "require[] [her] to sign it *before* allowing [her] to work." Dkt. 37 at 17 (emphasis in original). That too is wrong. As reviewed above, a signature is not necessary for an employment (or arbitration) agreement to be valid, and an employee who has received an employment agreement and begins work without signing it can be bound by it where, as here, she manifested her intent to be bound by it. *See, e.g., Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 53 (2d Cir. 2022) (employee, by course of conduct, manifested intent to be bound by employment agreement containing arbitration provision); *Frazier v. Stanley*, No. 16 Civ. 804, 2018 WL 11585450, at *7 (S.D.N.Y. Nov. 29, 2018) ("an employee may assume an obligation to arbitrate future employment claims if he or she continues to work after receipt of an arbitration

---

[8] For much the same reason, the Report erred in its reason for not granting the motion to compel arbitration. The Report faulted defendants for arguing—as an alternative argument in the event the motion to compel were denied—that the AC did not plausibly plead that Ugboaja was an employee as was necessary for her FLSA and NYLL claims. It held that this "asymmetry" in defendants' positions precluded their motion to compel. Report at 17. In fact, defendants were at liberty to make both such arguments under Federal Rule of Civil Procedure 8(e), under which a party "may not be precluded from pleading . . . alternative legal theories despite the inconsistency of these theories." *Omega Exec. Servs. v. Grant*, No. 78 Civ. 4616, 1980 WL 1432, at *2 (S.D.N.Y. Aug. 22, 1980); *see also Wu v. Pearson Educ. Inc.*, No. 9 Civ. 6557, 2011 WL 2314778, at *8 (S.D.N.Y. June 7, 2011).

Also errant was the Report's statement that "[w]here the parties dispute whether an agreement to arbitrate has been made, the presumption favoring arbitrability does not apply." Report at 17 (citing *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011)). *Applied Energetics* involved a very different scenario: the interplay between an initial agreement to arbitrate and a later contractual provision "which plainly preclude[d] arbitration." 645 F.3d at 525–26. In fact, once a party moving to compel arbitration makes a *prima facie* initial showing that an agreement to arbitrate existed, the burden shifts to the party opposing arbitration to put the making of that agreement "in issue." *Hines*, 380 F. App'x at 24. Defendants made that initial showing here, by substantiating the parties' mutual intent to be bound by the Employment Agreement.

16

policy"); *Manigault*, 318 F. App'x at 8 (employee bound by arbitration agreement when she failed to rebut presumption that she had received mailing containing notice of arbitration agreement and thereafter continued her employment); *see also McCrae v. Oak St. Health, Inc.*, No. 24 Civ. 1670, 2024 WL 4692047, at *6 (S.D.N.Y. Nov. 4, 2024) ("[a]n arbitration agreement in an unsigned written contract is enforceable when it is evident that the parties intended to be bound by the contract" (cleaned up)); *Nat'l City Golf Fin.*, 641 F. Supp. 2d at 203; *Crawford*, 361 N.Y.S.2d at 143–44 (1974); *God's Battalion of Prayer Pentecostal Church, Inc.*, 812 N.Y.S.2d at 436–37; *Liberty Mgmt. & Const. Ltd.*, 620 N.Y.S.2d at 830.

Accordingly, the Court grants defendants' motion to compel arbitration.

**B.        Motion to Dismiss**

Defendants also move to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6) and 12(b)(5). *See* Dkt. 35 at 15–27.  In light of the Court's ruling compelling arbitration, defendants' challenge to the plausibility of Ugboaja's claims is for the arbitrator, not the Court, to decide.  The Court accordingly denies the Rule 12(b)(6) motion as moot, without prejudice to defendants' right to make similar arguments in arbitration. *See, e.g., Glover v. Bob's Discount Furniture, LLC*, 621 F. Supp. 3d 442, 451 (S.D.N.Y. 2022) (denying motion to dismiss as moot in light of decision to compel arbitration); *Kaiser v. StubHub, Inc.*, No. 24 Civ. 44, 2024 WL 3445059, at *6 (S.D.N.Y. July 17, 2024) (same).

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to compel arbitration and dismisses as moot defendants' motion to dismiss. The Court stays the action pending the outcome of arbitration. *See Katz*, 794 F.3d at 345–46.

The Court respectfully directs the Clerk of Court to terminate the motions pending at dockets 21 and 35, and to stay this case. The parties are directed jointly to file a letter within four weeks as to the status of any arbitral proceeding, and thereafter jointly to file a status update every two months.

SO ORDERED.

Paul A. Engelmayer

_____
PAUL A. ENGELMAYER
United States District Judge


Dated: March 26, 2026
       New York, New York

18